UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x

BOARD OF EDUCATION OF THE
WAPPINGERS CENTRAL SCHOOL
DISTRICT,

                    Plaintiff,

        - against -

M.N. AND W.N., ON BEHALF OF THEIR
CHILD J.N.,

                 Defendants.

------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/13/2017

16-CV-09448
(TPG)

**OPINION**

In this case arising under the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* (2012), plaintiff and defendants have both moved for summary judgment. The instant action was filed in response to a decision by a State Review Officer ("SRO") issued on September 7, 2016. *See* SRO Decision. Plaintiff moves for summary judgment asking this court to reverse the SRO's decision that plaintiff failed to provide the defendant child, J.N., with a free and appropriate education ("FAPE") as required by the IDEA, and that it was required to reimburse defendants for tuition for the 2014-2015 and 2015-2016 school years. Defendants have filed a cross-motion for summary judgment requesting that this court affirm the SRO decision.

After consideration of the record below, the court affirms in part and reverses in part the SRO decision. The court (1) affirms the SRO's finding that plaintiff violated its Child Find obligation by failing to evaluate J.N. within a reasonable time after defendants' December 2014 communication with plaintiff,

(2) reverses the SRO decision with respect to its finding that the lack of a functional behavioral assessment ("FBA") before the child's placement in and of itself constituted a denial of FAPE, and (3) affirms the SRO decision that J.N.'s June 2015 individualized education program ("IEP") was inadequate, constituting a denial of FAPE. The court also affirms the SRO's decision that plaintiff must compensate defendants for J.N.'s school tuition for both the 2014-2015 and 2015-2016 school years.

## BACKGROUND

### I.     IDEA Legal Framework

Plaintiff commenced the instant action pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1412(a)(1) (2012), which mandates that states receiving federal funding provide qualifying disabled children with a free and appropriate public education ("FAPE"). The statute was enacted to "ensure that all children with disabilities have available to them a [FAPE] that emphasizes special education and related services designed to meet their unique needs." *Id.* § 1400(d)(1)(A). Accordingly, the Department of Education, through a Committee on Special Education ("CSE"), implements an individualized education program ("IEP") for each qualifying child. 20 U.S.C. § 1414(d)(1)(A)-(B); N.Y. Educ. Law §§ 4401-a, 4402(1)(b) (McKinney 2017); N.Y. Comp. Codes R. & Regs. tit. 8, §§ 200.3, 200.4(b) (2017).

An IEP is a written document setting out the child's up-to-date educational performance and establishing short and long-term goals to improve that performance. *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 224 (2d Cir. 2012).

When creating an IEP, the CSE must consider "the results of the initial or most recent evaluation; the student's strengths; the concerns of the parents for enhancing the education of their child; [and] the academic, developmental and functional needs of the student." N.Y. Comp. Codes R. & Regs. tit. 8, § 200.4(d)(1)(iii)(b)(2); *see also Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 107-08 (2d Cir. 2007) ("In developing a particular child's IEP, a CSE is required to consider four factors: (1) academic achievement and learning characteristics, (2) social development, (3) physical development, and (4) managerial or behavioral needs."). The IEP must set out " 'specially designed instruction and services that will enable the child to meet' stated educational objectives and is reasonably calculated to give educational benefits to the child." *M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ.*, 725 F.3d 131, 135 (2d Cir. 2013) (quoting *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012)).

An IEP must also create an educational environment that is the "least restrictive setting consistent with a child's needs." *M.H.*, 685 F.3d at 224 (quoting *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 379 (2d Cir. 2003)). This least restrictive setting is one that "(1) provides the special education needed by the student (2) to the maximum extent appropriate with other students who do not have handicapping conditions, and (3) is as proximate as possible to the student's place of residence." *Gagliardo*, 489 F.3d at 108.

Parents of eligible children who disagree with the recommendations of an IEP and believe that a school district is not providing their child with FAPE may file a complaint with an impartial hearing officer ("IHO"), appointed by the local

board of education, to initiate due process hearings. 20 U.S.C. § 1415(b)(6), (f); N.Y. Educ. Law § 4404(1)(a); N.Y. Comp Codes R. & Regs. tit. 8, § 200.5(j). The IHO then conducts a hearing on the claims specified in the complaint and issues an opinion. N.Y. Educ. Law § 4404(1)(a); N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(j). After the IHO issues a decision, either party may appeal the case to a State Review Officer ("SRO"), a state Department of Education officer, who reviews the IHO decision and who can affirm, reverse, or modify it. N.Y. Educ. Law § 4404(2); N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(k). The IDEA then allows either party to challenge the final administrative decision by bringing a civil action in state or federal court. 20 U.S.C. § 1415(i)(2)(A); N.Y. Educ. Law § 4404(3)(a).

## II.   Factual Background

W.N. and M.N. ("Parents") commenced the instant action on behalf of J.N., their teenage daughter. ECF No. 22, at 1; ECF No. 23, at 1. J.N. is diagnosed with attention deficit hyperactivity disorder ("ADHD"), reactive disorder ("RAD") and mood disorder. ECF No. 23, at 2. This action pertains to the events occurring between J.N.'s ninth and tenth grades—the 2014-2015 and the 2015-2016 school years. *See* ECF No. 18, at 8; ECF No. 19, at 18-19.

J.N. attended school in the Wappingers Central School District ("District") between second and fifth grade, from approximately 2005 to 2010. ECF No. 22, at 2; ECF No. 23, at 2-3. During this time, J.N. did "adequately well" in school, but experienced some social difficulties. SRO Decision, at 3; ECF No. 22, at 2. In 2005, parents took J.N. to get an evaluation for attention deficit disorder because

she was experiencing difficulties with focus and attention. SRO Decision, at 3. She was diagnosed with ADHD at that time. SRO Decision, at 3; ECF No. 22, at 2. In 2006, when J.N. was in third grade, parents requested an evaluation from the District, and a CSE convened for an evaluation on May 15, 2006. SRO Decision, at 3; ECF No. 22, at 2; ECF No. 25, at 3. The CSE found that J.N. was ineligible for special education services at that time. SRO Decision, at 3; ECF No. 22, at 2; ECF No. 25, at 3.

In the middle of J.N.'s sixth-grade year, the 2009-2010 school year, parents removed J.N. from the District and enrolled her in a nonpublic, out-of-District school called Mizzentop School. ECF No. 23, at 2-3; ECF No. 22, at 3. This decision was in response to the fact that J.N. was having trouble at school—frequently missing assignments, performing poorly on tests, and struggling socially. *See* SRO Decision, at 3; ECF No. 23, at 2-3.

Starting in the 2013-2014 school year, J.N.'s ninth-grade year, parents enrolled her in Miss Hall's School ("Miss Hall's"), a private boarding school in Pittsfield, Massachusetts. ECF No. 22, at 3; ECF No. 23, at 3; ECF No. 25, at 4-5. She was enrolled in an academic skills program and had meetings with the school psychologist while at Miss Hall's. ECF No. 22, at 3; ECF No. 25, at 5.

In her tenth-grade year, around December 2014, parents were notified that J.N. was hurting herself and posting suicidal thoughts on social media. ECF No. 22, at 4; ECF No. 23, at 4; ECF No. 25, at 5. She was asked to take a leave of absence for medical reasons out of the school's concern for her health and safety. SRO Decision, at 3; ECF No. 22, at 4; ECF No. 23, at 4. When J.N. returned

home, she was seen by a psychologist, Dr. Judith Moskowitz, for a psychoeducational evaluation. ECF No. 22, at 4; ECF No. 25, at 5-6. Dr. Moskowitz's report recommended that J.N. be placed in a therapeutic boarding school. ECF No. 22, at 4; ECF No. 25, at 6.

Around this time, parents contacted the District to bring the situation to its attention and explore schooling options for J.N. SRO Decision, at 3; ECF No. 22, at 4; ECF No. 25, at 6. Parents were referred to Nicole Gallacher, school counselor at John Jay High School. ECF No. 22, at 4; ECF No. 25, at 6. Parents made clear that J.N. was "in crisis" and had been asked to leave her current boarding school. ECF No. 22, at 4, ECF No. 25, at 7. Gallacher recommended hospitalization and told Parents that she would "look into" other options in the District. ECF No. 22, at 5; ECF No. 25, at 7. In an email dated January 14, 2015, Gallacher notified the District of J.N.'s status and requested advice on how to proceed with the case. SRO Decision, at 3 n.3; ECF No. 22, at 6; ECF No. 25, at 8.

Parents, after reaching out to the District, contacted Spring Ridge Academy ("Spring Ridge"), a therapeutic residential school located in Arizona, to inquire about possible enrollment. ECF No. 23, at 11; ECF No. 25, at 8. Spring Ridge holds itself out to be a 12-month, all-female, therapeutic boarding school for the ninth through twelfth grades. ECF No. 25, at 20. Almost all students in the program have experienced some degree of trauma, and the program is designed to provide a comprehensive, therapeutic and academic approach for those struggling with addictive or risky behaviors. ECF No. 23, at 27; ECF No.

25, at 20-21. The program proceeds in four phases—the orientation phase, the consistency phase, the integration phase, and the transition phase—designed on an individual basis to provide students with both academic and emotional support. ECF No. 23, at 28-29; ECF No. 25, at 23. Suzanne Courtney, executive director at Spring Ridge, evaluated J.N.'s paperwork and determined that Spring Ridge "could meet J.N.'s needs." ECF No. 25, at 10.

J.N. returned to Ms. Hall's in January of 2015 but, because of continued self-harming behaviors, was expelled from the school that month. SRO Decision, at 3; ECF No. 22, at 5; ECF No. 23, at 4. On January 18, 2015, Parents notified the District that they were planning on placing J.N. in Spring Ridge, and that they would contact the District if they required further assistance. SRO Decision, at 4; ECF No. 22, at 6; ECF No. 25, at 9. J.N. was then immediately enrolled at Spring Ridge on January 19, 2015. SRO Decision, at 4; ECF No. 22, at 6; ECF No. 25, at 9. Parents advised the District of the enrollment. SRO Decision, at 4; ECF No. 22, at 6; ECF No. 25, at 9.

Parents did not hear from the District again until March 19, 2015, when Parents, through counsel, referred J.N. to the CSE and requested a meeting. SRO Decision, at 4; ECF No. 22, at 7; ECF No. 25, at 9. In the correspondence, Parents informed the District that they would be seeking reimbursement for tuition at Spring Ridge because the District had failed to address J.N.'s needs. SRO Decision, at 4; ECF No. 19, at 5; ECF No. 22, at 7.

On April 15, 2015, the District requested parental consent to evaluate J.N., and Parents provided consent on April 19, 2015. SRO Decision, at 4; ECF No.

22, at 8; ECF No. 25, at 12. Parents requested that the testing include "some measure of social/emotional functioning" because J.N.'s needs were social and behavioral in nature. SRO Decision, at 4; ECF No. 25, at 12. The District's evaluation was assigned to the District's Assistant Director of Special Education, Julia Alvarez. ECF No. 19, at 6; ECF No. 22, at 15. On May 9, 2015, Parents provided the District with J.N.'s social history, and on May 19, 2015, Alvarez traveled to Spring Ridge to evaluate J.N. SRO Decision, at 4; ECF No. 25, at 12. The District gathered information on J.N.'s behaviors, diagnoses, medications, and prior recommendations and conducted its own evaluation. ECF No. 25, at 12-13.

On June 25, 2015 the CSE convened to conduct a review and reevaluate J.N.'s eligibility for special education. SRO Decision, at 4; ECF No. 25, at 13. The CSE found that J.N. was eligible for special education as a student with an emotional disturbance. SRO Decision, at 4; ECF No. 13, at 16; ECF No. 25, at 14-15. It determined that J.N. had "significant emotional delays" requiring the "intensive, small teacher-to-student ratio program provided in a special school environment." SRO Decision, at 4; ECF No. 25, at 17. The CSE recommended "a 12-month school year program, two 60-minute sessions of psychological counseling per week in a group setting, two 60-minute sessions of parent counseling and training per month, and completion of a functional behavioral assessment (FBA) and a behavioral intervention plan (BIP) pending a placement search." SRO Decision, at 4; ECF No. 25, at 13. The IEP implemented on that day ("June 2015 IEP") stated that the District should commence a search for

placement in both day and residential therapeutic schools and that the CSE would reconvene pending the search. SRO Decision, at 4. The "management needs" section of the IEP stated that "[J.N.] has significant emotional delays and requires an intensive, small teacher-to-student ratio program provided in a special school environment in order to academically progress." However, the IEP listed J.N.'s placement as "home public school district" at the public high school. SRO Decision, at 4.

On July 2, 2015, Parents consented to the District sending J.N.'s information to potential out-of-District schools. SRO Decision, at 5; ECF No. 25, at 17. On August 12, 2015, the District's assistant director of special education sent Parents an email updating them on the search. SRO Decision, at 5; ECF No. 25, at 18. Three schools expressed interest in enrolling J.N.—Kaplan Career Academy, Hawthorne Cedar Knolls, and George Jr. Republic School—but J.N. was unable to attend any of the schools' in-person admission interviews and thus was rejected from all three programs. ECF No. 23, at 21-22.

On August 19, 2015, Parents notified the District that they were rejecting the June 2015 IEP implemented for J.N.'s 2015-2016 school year. SRO Decision, at 5; ECF No. 25, at 19-20. Parents claimed that the IEP did not meet J.N.'s needs because they had not received a placement and, based on the severity of J.N.'s symptoms, a residential placement would be more appropriate than a day placement. SRO Decision, at 5; ECF No. 25, at 18-19. The letter further notified the District of Parents' intent to keep J.N. enrolled in Spring Ridge for the 2015-2016 school year and their intent to seek reimbursement for tuition. SRO

Decision, at 5; ECF No. 25, at 19. The District did not respond to this letter. ECF No. 25, at 19. On September 16, 2015, Parents filed their initial due process complaint notice. SRO Decision, at 5; ECF No. 25, at 20. On December 30, 2015, Parents amended their due process complaint notice, alleging that the District denied J.N. of FAPE for the 2010-2011 through the 2015-2016 school years. SRO Decision, at 5; ECF No. 25, at 34.

J.N. ran away from Spring Ridge on October 14, 2015. ECF No. 25, at 28. After this incident, Parents placed J.N. in a wilderness therapy program called WinGate, where she remained for a 10-week period. SRO Decision, at 5; ECF No. 25, at 28. Parents notified the District on October 16, 2015 that J.N. would be placed in this wilderness program. ECF No. 25, at 29. She was discharged from the wilderness program on December 28, 2015 and returned to Spring Ridge, which was where she was enrolled at the time that the impartial hearing commenced. SRO Decision, at 5; ECF No. 25, at 29.

### III.   State Administrative Proceedings

Parents' December 30 due process complaint notice alleged that the District deprived J.N. of FAPE between 2010 and 2016 because the District (1) failed to identify J.N. as an eligible child, violating its Child Find obligations during the 2010-2011 through 2014-2015 school years; and (2) failed to locate an appropriate placement for J.N. for the 2015-2016 school year. SRO Decision, at 6. On February 23, 2016, Parents notified the District by email that they would be withdrawing their claims prior to the 2014-2015 school year. ECF No. 23, at 48; ECF No. 25, at 34.

### A.   IHO Decision

The impartial hearings, conducted by IHO Carl Wanderman, commenced on March 7, 2016 and concluded on April 8, 2016. IHO Decision, at 1; SRO Decision, at 6; ECF No. 25, at 35. In his decision dated March 7, 2016, IHO Wanderman concluded that (1) the District did violate its Child Find obligations and failed to provide J.N. with FAPE for the portion of the 2014-2015 school year following the Parents' December 2014 communication with the District; and (2) the June 2015 IEP did not provide J.N. with FAPE for the 2015-2016 school year. IHO Decision, at 28-29; SRO Decision, at 6-7; ECF No. 25, at 34-35.

With respect to the District's Child Find obligations under the IDEA, IHO Wanderman found that once Parents had informed the District of an "emergency situation" in December 2014, the District had reason to suspect that the student would be eligible for special education. SRO Decision, at 6; *see also* IHO Decision, at 28. Further, with respect to the June 2015 IEP, IHO Wanderman found that the District deprived J.N. of FAPE because it failed to ensure that an appropriate IEP was in place at the start of the school year—it neglected to provide adequate recommendations or reconvene the CSE. SRO Decision, at 7. IHO Wanderman also found that the goals listed in the June 2015 IEP could not be accomplished in a general public education setting as set forth on its face. SRO Decision, at 7. IHO Wanderman declined to order reimbursement for the 2014-2015 school year because of Parents' failure to provide timely notice of J.N.'s unilateral placement at Spring Ridge, but ordered reimbursement for

tuition at Spring Ridge for the 2015-2016 school year. SRO Decision, at 6, 37; ECF No. 25, at 25.

**B.    SRO Decision**

After issuance of the IHO decision, the District appealed, asserting that IHO Wanderman incorrectly concluded that the District violated its Child Find obligations and implemented an inadequate IEP. SRO Decision, at 8; ECF No. 23, at 54. The District argued that (1) it did not violate its Child Find obligations in December 2014, (2) the June 2015 IEP was appropriate, (3) Parents should not be entitled to tuition reimbursement for the 2015-2016 school year, and (4) Parents hindered the District's IEP implementation because they failed to fully cooperate. SRO Decision, at 8-9; ECF No. 23, at 54.

On September 7, 2016, SRO Justyn Bates issued his decision affirming in part and reversing in part the IHO decision. SRO Decision, at 43. SRO Bates found that the evidence in the record supported the IHO's finding that the District violated its Child Find obligations when it failed to trigger an evaluation for disability after Parents' December 2014 communication. SRO Decision, at 13. Regarding the June 2015 IEP, SRO Bates found that the District failed to finalize an adequate IEP by the start of J.N.'s 2015 school year, failing to provide J.N. with FAPE. SRO Decision, at 24-25. SRO Bates also found that Spring Ridge was an appropriate placement for J.N. for the 2014-2015 and 2015-2016 school years, and that Parents were entitled to reimbursement for the portion of the 2014-2015 school year that J.N. attended Spring Ridge, as well as for the 2015-2016 school year. SRO Decision, at 28-31. SRO Bates thus found that the IHO

erred in failing to award tuition reimbursement for the 2014-2015 and 2015-2016 school year, reversing the IHO decision for this issue but affirming the rest of the IHO decision. SRO Decision, at 43.

On December 7, 2017, the District, as plaintiff, commenced the instant action appealing the SRO decision. ECF No. 1. Plaintiff alleges that (1) the SRO incorrectly concluded that it violated its Child Find obligation, and (2) plaintiff was in the process of implementing an adequate IEP and thus did not deny J.N. of FAPE for the 2014-2015 or the 2015-2016 school years. ECF No. 1, at 11-15. Plaintiff further alleges that tuition reimbursement is inappropriate, because defendants' failure to timely notify plaintiff of J.N.'s unilateral placement relieves plaintiff of any tuition reimbursement for the 2014-2015 school year and regardless, that Spring Ridge is an inappropriate placement for J.N. ECF No. 1, at 11-12, 15-17.

**STANDARD OF REVIEW**

Motions for summary judgment in the context of the IDEA differ from typical summary judgment motions analyzed under Federal Rule of Civil Procedure 56. When a party moves for summary judgment in an IDEA case, courts consider it "in substance an appeal from an administrative determination" rather than summary judgment. *Scott ex rel. C.S. v. N.Y.C. Dep't of Educ.*, 6 F. Supp. 3d 424, 434 (S.D.N.Y. 2014) (quoting *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 83 n.3 (2d Cir. 2005)). Courts consider summary judgment in this context a "pragmatic procedural mechanism for reviewing

administrative decisions." *Id.* (quoting *M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ.*, 725 F.3d 131, 138 (2d Cir. 2013)).

In this way, summary judgment in an IDEA case requires an analysis that is functionally different relative to other summary judgment motions. In deciding a motion for summary judgment in an IDEA case, the court conducts an "independent judicial review" and bases its decision on a preponderance of the evidence. *A.M. ex rel. Y.N. v. N.Y.C. Dep't of Educ.*, 964 F. Supp. 2d 270, 277 (S.D.N.Y. 2013). It must, however, award deference to the administrative proceedings and be "mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Id.* (quoting *A.C. ex rel. M.C. v. Bd. of Educ.*, 553 F.3d 165, 171 (2d Cir. 2009)). A court's review is "by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982). It is thus more than "clear-error review" but "falls well short of complete *de novo* review." *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 244 (2d Cir. 2012).

The degree of deference awarded to the administrative proceedings depends on the quality and thoroughness of the decisions. Deference "hinge[s] on the kinds of considerations that normally determine whether any particular judgment is persuasive, for example whether the decision being reviewed is well-reasoned, and whether it is based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." *M.H.*, 685 F.3d at 244. Substantive determinations, such as findings regarding the adequacy of an IEP,

should be given more weight than procedural determinations, such as whether a school district used the correct procedures to develop and implement an IEP. *Id.* This is in consideration of the educational expertise that state administrative officers have. *See R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 189 (2d Cir. 2012); *Scott ex rel. C.S. v. N.Y.C. Dep't of Educ.*, 6 F. Supp. 3d 424, 441 (S.D.N.Y. 2014); *B.R. ex rel. K.O. v. N.Y.C. Dep't of Educ.*, 910 F. Supp. 2d 670, 675 (S.D.N.Y. 2012). Further, findings that are "thorough and logical" should be afforded more weight than those that are not. *M.H.*, 685 F.3d at 244.

Because the SRO decision is the "final state administrative determination," courts afford more weight to the SRO decision as the "final decision of the state authorities" provided it is well-reasoned and grounded in the record. *A.M. ex rel. Y.N. v. N.Y.C. Dep't of Educ.*, 964 F. Supp. 2d 270, 278 (S.D.N.Y. 2013) (quoting *M.H.*, 685 F.3d at 241, 246). If the SRO and IHO decisions both come to the same conclusion, "[d]eference is especially appropriate." *W.A v. Hendrick Hudson Cent. Sch. Dist.*, 219 F. Supp. 3d 421, 455 (S.D.N.Y. 2016) (quoting *A.A. v. N.Y.C. Dep't of Educ.*, No. 14-CV-8483, 2015 WL 10793414, at *10 (S.D.N.Y. Aug. 24, 2015)).

## DISCUSSION

The court analyzes the current action pursuant to the circumscribed *de novo* review detailed above. Plaintiff raises two main claims in its appeal: (1) the SRO incorrectly concluded that it failed in its obligation to identify J.N. as an individual with a disability (its Child Find obligation), and thus that the IHO and SRO's decisions should be reversed on this issue, (2) plaintiff's IEP for the 2015-2016 school year provided FAPE. ECF No. 1, at 11-15. Thus, plaintiff claims that

the SRO's award of tuition reimbursement for the 2014-2015 and 2015-2016 school years is inappropriate. ECF No. 1, at 11-12, 15-17.

## I.   Plaintiff's Child Find Obligation

The IDEA imposes a "child find" requirement on states, requiring that states actively "identif[y], locat[e], and evaluat[e]" children with disabilities living in the state. 20 U.S.C. § 1412(a)(3)(A); *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 244 (2009). This obligation also extends to children who have not been formally diagnosed with a disability, but that are "suspected of being a child with a disability." 34 C.F.R. § 300.111(c)(1) (2006); *see also W.A. v. Hendrick Hudson Cent. Sch. Dist.*, 219 F. Supp. 3d 421, 456 (S.D.N.Y. 2016); *J.S. v. Scarsdale Union Free Sch. Dist.*, 826 F. Supp. 2d 635, 660 (S.D.N.Y. 2011); *A.P. ex rel. Powers v. Woodstock Bd. of Educ.*, 572 F. Supp. 2d 221, 224 (D. Conn. 2008).

School districts have been found to have violated this obligation when they have "overlooked clear signs of disability" or have been negligent in their decision not to order an evaluation. *J.S.*, 826 F. Supp. 2d at 661 (quoting *Bd. of Educ. v. L.M.*, 478 F.3d 307, 313 (6th Cir. 2007)). Courts look to both educational achievement and psychological history when making this determination. *See id.* It is not a requirement that parents request an evaluation—a district's Child Find obligation is an affirmative one. *See Regional Sch. Dist. No. 9 Bd. of Educ. v. Mr. & Mrs. M.*, No. 07-CV-1484, 2009 WL 2514064, at *13 n.9 (D. Conn. Aug. 7, 2009) ("The Child Find requirement is an affirmative obligation and a parent is not required to request that a school district identify and evaluate a child.").

Because "a state's child find duty is triggered when it has . . . reason to suspect that special education services may be needed," a school district must evaluate a child within a reasonable time once they suspect a disability. *R.E. v. Brewster Cent. Sch. Dist.*, 180 F. Supp. 3d 262, 270 (S.D.N.Y. 2016) (quoting *J.S.*, 826 F. Supp. 2d at 660); *W.A. v. Hendrick Hudson Cent. Sch. Dist.*, 219 F. Supp. 3d 421, 457 (S.D.N.Y. 2016). There is no set standard for what constitutes a "reasonable time," and the decisions of the IHO and SRO are afforded a high degree of deference on this issue, as "there are good reasons to doubt that the federal judiciary, limited in its insight into matters of sound educational policy, could divine the number of months that may be thought reasonable in this specialized context." *W.A.*, 219 F. Supp. 3d at 460. If a school district does not evaluate the child within a reasonable time, it "necessarily fails to provide that student a FAPE." *Id.* at 456 (quoting *Greenwich Bd. of Educ. v. G.M.*, No. 13-CV-235, 2016 WL 3512120, at *8 (D. Conn. June 22, 2016)).

Children who have severe emotional disturbances and, as a result, need special education qualify as "children with disabilities." *J.D. ex rel. J.D. v. Pawlet Sch. Dist.,* 224 F.3d 60, 65 (2d Cir. 2000); *see also J.S. v. Scarsdale Union Free Sch. Dist.,* 826 F. Supp. 2d 635, 661-62 (S.D.N.Y. 2011); N.Y. Comp. Codes R. & Regs. tit. 8, § 200.1(zz)(4). Emotional disturbance includes "inability to learn that cannot be explained by intellectual, sensory, or health factors," "inability to build or maintain satisfactory interpersonal relationships," "inappropriate types of behavior or feelings," "pervasive . . . unhappiness or depression," and the "tendency to develop physical symptoms or fears associated with personal or

school problems." N.Y. Comp. Codes R. & Regs. tit. 8, § 200.1(zz)(4). At least one of these characteristics must last "over a long period of time and to a marked degree that adversely affects a student's educational performance." *Id.*

In the instant action, defendants notified plaintiff of an emergency situation with respect to J.N. in December of 2014. SRO Decision, at 3; ECF No. 22, at 4; ECF No. 25, at 6. When defendants contacted Gallacher to inform her that J.N. was hurting herself and expressing suicidal thoughts, and further, that J.N. was asked to leave her boarding school because of the extremity of her behaviors, ECF No. 22, at 4; ECF No. 25, at 7, plaintiff had reason to suspect that an evaluation would be needed. Thus, in December 2014, the District's Child Find obligation was triggered, and the District was required to refer J.N. to the CSE and "conduct an evaluation of [her] within a reasonable time." *W.A. v. Hendrick Hudson Cent. Sch. Dist.*, 219 F. Supp. 3d 421, 459 (S.D.N.Y. 2016) (quoting *Murphy v. Town of Wallingford*, No. 10-CV-278, 2011 WL 1106234, at *3 (D. Conn. Mar. 23, 3011)); *R.E. v. Brewster Cent. Sch. Dist.*, 180 F. Supp. 3d 262, 270 (S.D.N.Y. 2016).

After defendants contacted Gallacher in December 2014, however, the plaintiff failed to refer J.N. to the CSE or to take any action until defendants requested to be referred to the CSE in March 2015. SRO Decision, at 4; ECF No. 22, at 7. Further, the District failed to fully evaluate J.N. and implement an adequate IEP before the start of the 2015-2016 school year. SRO Decision, at 5; ECF No. 25, at 19-20. Both the IHO and the SRO made the determination that plaintiff failed to comply with its Child Find obligations, and these findings are

supported in the record by a preponderance of the evidence. Accordingly, the court affirms the SRO's conclusion that plaintiff violated its Child Find obligation.

## II.   Denial of FAPE and Tuition Reimbursement

Plaintiff alleges that the SRO's decision that it denied J.N. of FAPE and thus should compensate defendants for J.N.'s tuition for the 2014-2015 and 2015-2016 school years should be reversed. ECF No. 18.

A parent who believes the state has failed to provide an eligible child with FAPE may unilaterally place a child in a different educational environment and seek reimbursement from the school district as part of the due process complaint. *T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 252 (2d Cir. 2009) ("Parents who believe that the state has failed to provide [FAPE] may pay for private services and seek reimbursement from the school district for 'expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP.'" (quoting *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 371 (1985))).

When determining whether a parent is entitled to reimbursement for tuition, courts deploy the *Burlington/Carter* test, which analyzes whether (1) the school district provided the eligible child with FAPE, (2) whether the parents' alternative placement was appropriate, and (3) whether the equities are in the parents' favor. *Florence Cty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 12-15 (1993); *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369-70 (1985); *C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 76 (2d Cir. 2014).

At the hearing, the school district initially has the burden of proving that it provided FAPE. *See* N.Y. Educ. Law § 4404(1)(c); *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 184-85 (2d Cir. 2012); *F.O v.  N.Y.C. Dep't of Educ.*, 976 F. Supp. 2d 499, 506 (S.D.N.Y. 2013). If the school district fails to show that it was providing FAPE, the parents must establish that the alternative placement was appropriate, and that the equities are in their favor. *R.E.*, 694 F.3d at 185; *F.O.*, 976 F. Supp. 2d at 506.

### A.      2014-2015 School Year

With respect to the 2014-2015 school year, plaintiff alleges that (1) Spring Ridge was an inappropriate placement for J.N. under the second *Burlington* prong, ECF No. 18, at 23-30, and (2) defendants failed to provide notice of their unilateral placement of J.N. in the 2014-2015 school year, and thus the equities favor plaintiff on the third *Burlingon* prong, ECF No. 18, at 22-23. Plaintiff claims that the SRO's determination that it should compensate defendants for J.N.'s 2014-2015 tuition is therefore incorrect and should be overturned. ECF No. 18, at 22-30.

### 1.      Appropriateness of Alternative Placement

Plaintiff claims that defendants did not meet their burden under *Burlington* of demonstrating that Spring Ridge was an appropriate placement, and thus the SRO's determination that plaintiff should reimburse defendants for the 2014-2015 school year should be overturned. ECF No. 18, at 23-30.

Under the second prong of the *Burlington* test, parents' alternative private placement of their child must be appropriate in order for them to be entitled to

reimbursement. *Florence Cty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 12-13 (1993); *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369-70 (1985). To meet their burden of demonstrating that the private placement was appropriate, parents must show the placement was "reasonably calculated to enable the child to receive educational benefits." *S.B. v. N.Y.C. Dep't of Educ.*, 117 F. Supp. 3d 355, 362 (S.D.N.Y. 2015) (quoting *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 364 (2d Cir. 2006)). Parents are not required, however, to meet all of the FAPE requirements set out in the IDEA. *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 187 n.3 (2d Cir. 2012); *S.B.*, 117 F. Supp. 3d at 362 ("However, parents are 'not required . . . to prove that the private placement furnishes every special service necessary.'" (internal quotations omitted) (quoting *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 839 (2d Cir. 2014))).

In the instant action, the SRO found that J.N.'s placement at Spring Ridge was appropriate. SRO Decision, at 25-36. He found that "[a] review of the hearing record shows that Spring Ridge regularly reviewed the student's master treatment plan and that changes were made to it over time based on the student's needs and completion or resolution of objectives." SRO Decision, at 29. The SRO further found that "Spring Ridge chose specific therapeutic strategies to employ with the student" and that it used "numerous strategies . . . to address [J.N.'s] behavior." SRO Decision, at 29-30. The SRO also concluded that the academic, therapeutic, and community components of the program were all integrated, and that it "offered the student specially designed instruction that met her unique, and changing, needs." SRO Decision, at 31.

With respect to plaintiff's argument that J.N. did not demonstrate any meaningful progress at Spring Ridge, the SRO found that "while student's initial progress may have been slow, . . . the hearing record demonstrates that the student made overall progress. SRO Decision, at 33. Lastly, the decision found that Spring Ridge adequately provided for short-and long term goals and addressed J.N.'s RAD diagnosis. SRO Decision, at 36. Thus, the SRO found, Spring Ridge was an adequate placement for J.N. under the *Burlington* test. SRO Decision, at 25-36. The IHO had also come to the conclusion that Spring Ridge was an appropriate placement. SRO Decision, at 7 ("[A]fter identifying the student's needs and describing the academic and therapeutic program at Spring Ridge, the IHO found that Spring Ridge provided the student with educational and therapeutic services that were appropriate to meet the student's needs.").

The appropriateness of a student's placement is a determination that requires educational expertise, and thus the IHO and SRO decisions should be accorded deference. *See R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 189 (2d Cir. 2012); *Scott ex rel. C.S. v. N.Y.C. Dep't of Educ.*, 6 F. Supp. 3d 424, 441 (S.D.N.Y. 2014); *B.R. ex rel. K.O. v. N.Y.C. Dep't of Educ.*, 910 F. Supp. 2d 670, 675 (S.D.N.Y. 2012). Given the IHO and SRO's close analysis of the record, their well-reasoned opinions, and their expertise on educational policy, the court defers to those decisions, and finds that Spring Ridge was an appropriate placement for J.N. for the 2014-2015 school year.

### 2.    Consideration of Equities

Plaintiff alleges that defendants' failure to provide notice of their intent to unilaterally place J.N. at Spring Ridge within 10 business days of enrollment, as required by 20 U.S.C. § 1412(a)(10)(C)(iii)(I) (2012), affected plaintiff's ability to convene for an initial review before enrollment at Spring Ridge, and that therefore the equities lie in their favor, ECF No. 18, at 22-23.

"[E]quitable considerations [relating to the reasonableness of the action taken by the parents]" are relevant in determining whether, and to what extent, parents should be reimbursed. *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 363 (2d Cir. 2006) (alteration in original). Parents bear the burden of demonstrating that equities lie in their favor. *S.B. v. N.Y.C. Dep't of Educ.*, 117 F. Supp. 3d 355, 361-62 (S.D.N.Y. 2015). The authority to grant reimbursement is discretionary—the court "has broad discretion to consider the range of all relevant facts in determining whether and to what extent awarding relief is equitable." *J.S. v. Scarsdale Union Free Sch. Dist.*, 826 F. Supp. 2d 635, 671 (S.D.N.Y. 2011).

One such consideration is whether parents "obstructed or were uncooperative in the school district's efforts to meet its obligations under the IDEA." *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 840 (2d Cir. 2014); *GB v. N.Y.C. Dep't of Educ.*, 145 F. Supp. 3d 230, 244 (S.D.N.Y. 2015). Thus, parents failure to provide written notice to the school district of an alternative placement within "10 business days . . . prior to the removal of the child from the public school" may result in the reduction or denial of tuition reimbursement. 20 U.S.C. § 1412(a)(10)(C)(iii)(I)(bb).

Here, the SRO determined that equitable considerations favor reimbursement, noting that "the student's need for a therapeutic placement came about as a result of a crisis" and that "after the [P]arents referred the student to the CSE, they cooperated fully with the CSE, consented to evaluations, made the student available to the CSE for those evaluations and participated in the CSE meeting." SRO Decision, at 38. This conclusion is well-reasoned and fully supported by the record, entitling it to deference by this court. *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 244 (2d Cir. 2012).

Further, Parents did notify the plaintiff of the precarious situation they faced in December 2014, putting plaintiff on notice that they should evaluate J.N. and implement an IEP. SRO Decision, at 3; ECF No. 22, at 4; ECF No. 25, at 6. Lastly, 20 U.S.C. § 1412(a)(10)(C)(iii) sets forth a case in which reimbursement "*may be* reduced or denied," but whether or not to grant reimbursement is discretionary. Considering the deference afforded to the SRO decision as well as the court's independent review of the relevant facts, the court finds that the equities favor reimbursement.

Because the court finds that (1) J.N.'s placement at Spring Ridge was appropriate and (2) the equities favor reimbursement, the SRO decision is affirmed, and the court holds that defendants are entitled to reimbursement for J.N.'s tuition at Spring Ridge for the 2014-2015 school year.

### B.    2015-2016 School Year

As for the 2015-2016 school year, plaintiff argues under the first *Burlington* prong that (1) the SRO incorrectly concluded that plaintiff was

obligated to conduct an FBA prior to J.N.'s placement in a recommended special education program, and that the lack of an Functional Behavioral Assessment ("FBA") did not constitute a denial of FAPE, ECF No. 18, at 10-14; and (2) based on the information available to it at the time, that plaintiff crafted an appropriate IEP providing J.N. with FAPE, ECF No. 18, at 17-22. Plaintiff argues that under the second *Burlington* prong, defendants' unilateral placement of J.N. at Spring Ridge for the 2015-2016 school year was not appropriate. *See* ECF No. 18, at 23-30. Lastly, it argues that under the third *Burlington* prong, defendants' lack of cooperation impeded plaintiff's ability to find an appropriate placement and thus the equities are in its favor. ECF No. 18, at 19-23. Thus, plaintiff contends that the SRO's conclusion that plaintiff should reimburse defendants for the 2015-2016 school year for lack of FAPE should be overturned.

### 1.   FAPE

When determining whether a school district has met its obligation to provide FAPE, courts look to whether the IEP was developed in accordance with both procedural and substantive requirements of the IDEA. "First, [the court] examine[s] whether the state has complied with the procedures set forth in the IDEA" and pertinent state laws and regulations. *T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 252 (2d Cir. 2009) (per curiam). Second, the court considers whether the IEP is substantively sound—whether it is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 1001 (2017).

### i.    Procedural Adequacy

The procedural claims on appeal from the SRO decision relate to whether plaintiff was required to conduct a Functional Behavioral Assessment ("FBA"). Plaintiff claims that it was not required to conduct an FBA until J.N.'s placement search was complete, and thus the SRO's conclusion that the lack of an FBA constituted a serious procedural violation in this circumstance should be reversed. ECF No. 1, at 12-13; ECF No. 18, at 10-14. Defendants claim that, in accordance with the SRO decision, the lack of an FBA was a serious procedural violation contributing to the inadequacy of the June 2015 IEP. ECF No. 21, at 11-12.

An FBA is a tool used in crafting an IEP, and New York law requires that a school district conduct an FBA for students "whose behavior impedes his or her learning or that of others" in order to "ascertain the physical, mental, behavioral and emotional factors which contribute to the suspected disabilities." N.Y. Comp. Codes R. & Regs. tit. 8, § 200.4(b)(1)(v). An FBA must provide "a hypothesis regarding the general conditions under which a behavior usually occurs and probable consequences that serve to maintain it." *Id.* § 200.1(r). It pinpoints the problematic behavior, clearly defines the behavior and identifies the factors that contribute to the behavior. *Id.*

The purpose of an FBA is to "ensure that the IEP's drafters have sufficient information about the student's behaviors to craft a plan that will appropriately address those behaviors." *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 190 (2d Cir. 2012). Thus, although failure to conduct an FBA may constitute a

procedural violation, it does not necessarily rise to the level of denial of FAPE. *Id.* ("We have held that failure to conduct an FBA is a procedural violation, but that it does not rise to the level of a denial of FAPE if the IEP adequately identifies the problem behavior and prescribes ways to manage it."); *see also C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 80 (2d Cir. 2014) ("While the omission of a functional behavioral assessment 'cause[s] us to take particular care to ensure that the IEP adequately addresses the child's problem behaviors,' the production of such assessment is not required by the IDEA." (alteration in original) (quoting *M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ.*, 725 F.3d 131, 140 (2d Cir. 2013))). FBAs are only required if they are "necessary to ascertain the physical, mental, behavioral and emotional factors which contribute to the suspected disabilities." N.Y. Comp. Codes R. & Regs tit. 8, § 200.4(b)(1)(v). Thus the *sole* fact that that an FBA was not conducted does not constitute a denial of FAPE unless the failure to conduct an FBA hindered the CSE's ability to create an adequate IEP. *See R.F.*, 746 F.3d at 80; *R.E.*, 694 F.3d at 190.

The Second Circuit has found that in some instances, delaying an FBA until a child commences the recommended educational environment is not considered a serious procedural violation that constitutes a denial of FAPE. *See, e.g., Cabouli v. Chappaqua Cent. Sch. Dist.*, 202 F. App'x 519, 522 (2d Cir. 2006); *M.N. v. Katonah-Lewisboro Sch. Dist.*, No. 14-CV-3845, 2016 WL 4939559, at *15 n.24 (S.D.N.Y. Sept. 14, 2016); *J.C.S. v. Blind Brook-Rye Union Free Sch. Dist.*, No. 12-CV-2896, 2013 WL 3975942, at *13 (S.D.N.Y. Aug. 5, 2013). Further, courts in this Circuit have found that deferring an FBA until the beginning of the

school year or until a child becomes acclimatized to a new location is not considered a denial of FAPE. *See S.H. ex rel. W.H. v. Eastchester Union Free Sch. Dist.*, No. 10-CV-3927, 2011 WL 6108523, at *9 (S.D.N.Y. Dec. 8, 2011).

In the current case, plaintiff did not conduct an FBA before the implementation of the June 2015 IEP. SRO Decision, at 19-20. The District, through Alvarez, conducted a psychoeducational evaluation at Spring Ridge that included classroom observation, review of J.N.'s performance on standardized tests and classes, review of J.N.'s medical diagnoses, a social history, and feedback from Spring Ridge. SRO Decision, at 19. The psychoeducational evaluation also included results from the Behavior Assessment System for Children-Second Edition, or BASC-2. SRO Decision, at 19. According to plaintiff, an FBA was not conducted because plaintiff was waiting until J.N. was placed in a new school. ECF No. 18, at 12. The CSE planned to reconvene pending completion of a placement search, and the IEP states as much. ECF No. 23, at 21.

The SRO found that the lack of an FBA in this instance constituted a "serious procedural violation." SRO Decision, at 21. The court disagrees. The record makes clear that plaintiff conducted an in-depth evaluation of J.N.'s environment at Spring Ridge, SRO Decision, at 19; ECF No. 25, at 12, but was purposefully waiting to conduct an FBA until after a placement search had been concluded, ECF No. 18, at 12. The June 2015 IEP specified that the CSE would reconvene after the conclusion of a placement search. SRO Decision, at 15. Considering the evaluation that Alvarez conducted, including the BASC-2

assessment, SRO Decision, at 19, as well as the fact that Spring Ridge was an out-of-District, out-of-state school whose program differed from plaintiff's District schools, the sole fact that plaintiff did not conduct an FBA prior to the implementation of an IEP does not amount to a denial of FAPE. Thus, the court reverses the SRO's finding that plaintiff was required to conduct an FBA before J.N. was placed in an approved school.

### ii.    Substantive Adequacy

The substantive claims relate to whether plaintiff, in June 2015, implemented an adequate IEP for J.N.'s needs in the 2015-2016 school year. Plaintiff contends that its actions did not constitute denial of FAPE for the 2015-2016 school year, and that it should not be required to compensate defendants for J.N.'s tuition at Spring Ridge for the 2015-2016 school year. ECF No. 18, at 17-22. It asks the court to overturn the SRO decision with respect to tuition reimbursement for that year.

A school district fulfills the substantive requirements of the IDEA if it provides "an IEP that is likely to produce progress, not regression, and if the IEP affords the student with an opportunity greater than mere trivial advancement." *A.C. ex rel. M.C. v. Bd. of Educ.*, 553 F.3d 165, 173 (2d Cir. 2009) (quoting *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 195 (2d Cir. 2005)). It is not, however, required to provide "every special service necessary to maximize each handicapped child's potential." *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 195 (2d Cir. 2005) (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 199 (1982)). Rather, it must open the door to public education in a "meaningful way." *Scott*

*ex rel. C.S. v. N.Y.C. Dep't of Educ.*, 6 F. Supp. 3d 424, 436 (S.D.N.Y. 2014) (quoting *M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ.*, 725 F.3d 131, 143 (2d Cir. 2013)).

The SRO found that plaintiff failed to offer J.N. a FAPE during the 2015-2016 school year because of the inadequacy of the June 2015 IEP. SRO Decision, at 25. This determination was based on the fact that (1) the IEP was not in complete and finalized form by the beginning of the 2015-2016 school year, (2) the CSE failed to include a post-secondary transition plan in the IEP, and (3) the IEP's placement of J.N. in a "Home Public School District." SRO Decision, at 22-25. The IHO also found that the June 2015 IEP failed to offer J.N. with FAPE, finding that although "an interim IEP may be appropriate in certain situations . . . the [D]istrict ultimately failed to offer the student a FAPE during the 2015-2016 school year because it failed to have an IEP in place at the start of the school year that recommended an appropriate therapeutic placement and failed to reconvene the CSE and recommend such a placement during the school year through the date of the decision." SRO Decision, at 7. The IHO also found that the goals laid out on the face of the IEP could not be implemented in a general education setting. SRO Decision, at 7.

The court agrees with both the IHO and the SRO, and finds that plaintiff denied J.N. a FAPE for the 2015-2016 school year. Plaintiff failed to implement a finalized IEP by the start of the 2015 school year, notwithstanding the fact that it was made aware of J.N.'s condition in December 2014. SRO Decision, at 15. Further, the IEP implemented in June 2015 listed J.N.'s placement as "home

public school district" even though the "management needs" section of the IEP specified that J.N. would need a "special school environment," suggesting the placement was not tailored to J.N.'s emotionally fragile state. With deference to the IHO and SRO decisions, as well as based on the court's independent review of the record, the court finds that plaintiff did not provide J.N. with FAPE for the 2015-2016 school year.

### 2.    Appropriateness of Alternative Placement

Plaintiff also argues that Spring Ridge was not an appropriate placement for J.N. for the 2015-2016 school year, and that the defendants did not meet its burden under the second prong of the *Burlington* test. ECF No. 18, at 23-30. However, as stated above, the court finds that, with deference to the IHO and SRO determinations, Spring Ridge was an appropriate placement for J.N., and that defendants have met their burden.

### 3.    Consideration of Equities

Plaintiff alleges that defendants' failure to visit state-approved placements constituted a failure to cooperate, and thus that the equities are in its favor. ECF No. 18, at 19-22. Plaintiff claims that defendants' refusal to allow J.N. to attend in-person intakes frustrated its ability to locate an adequate placement. ECF No. 18, at 21.

As stated above, the last prong of the *Burlington* test is consideration of the equities. *Florence Cty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 12-13 (1993); *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369-70 (1985). An important part of that consideration is whether "parents obstructed

31

or were uncooperative in the school district's efforts to meet its obligations under the IDEA." *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 840 (2d Cir. 2014). Whether parents "cooperated with the CSE" by "provid[ing] private evaluations, participat[ing] in the IEP meeting, [and] visit[ing] the proposed placement[s]" is relevant to determining whether equities favor reimbursement. *See M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 254 (2d Cir. 2012).

The IHO and SRO decisions both found that equitable considerations favor tuition reimbursement for the 2015-2016 school year. SRO Decision, at 41. There is no dispute that defendants promptly provided consent for evaluations, attended the June 2015 CSE meeting, and provided plaintiff with the necessary information. SRO Decision, at 38. The only issue is whether defendants' refusal to allow J.N. to attend in-person intakes, as well as its refusal to accept day programs, constitutes failure to cooperate. SRO Decision, at 41; ECF No. 18, at 21-22. The SRO found that, based on the record, "[J.N's] [P]arents had a reasonable basis to take these positions and that they did so in a good-faith effort to ensure [her] safety and therapeutic progress" and that "in all other manners . . . cooperated with the [D]istrict." SRO Decision, at 41.

Based on a review of the record, this court agrees that the equities favor reimbursement for the 2015-2016 school year. Defendants stated on the record that they were acting on the advice of Spring Ridge, and reasonably believed that it would be dangerous for J.N. to leave this familiar environment for an in-person intake interview. ECF No. 25, at 38-29. Further, J.N. did participate in intake interviews digitally via Skype. ECF No. 25, at 31. Thus, giving due weight to the

IHO and SRO decisions and reviewing the record, the court finds that the equities lie in favor of reimbursement.

Based on the three-prong *Burlington* test, the court finds that defendants are entitled to reimbursement from plaintiff for both the 2014-2015 and 2015-2016 school years. The court affirms the SRO's decision with respect to the 2014-2015 school year, finding that Spring Ridge was an appropriate alternative placement and that the equities were in favor of defendants. For the 2015-2016 school year, the court affirms the SRO's decision that defendants should be reimbursed based on the fact that the June 2015 IEP was substantively inadequate, Spring Ridge was an appropriate placement, and equities were in favor of reimbursement. The court reverses, however, the SRO's determination that an FBA was required in advance of J.N.'s placement in order for the IEP to be adequate.

## CONCLUSION

For the reasons given above, the court affirms the SRO decision on all but one issue, and finds that defendants should be reimbursed for J.N.'s school tuition for both the 2014-2015 and the 2015-2016 school years. The court finds that the SRO was correct (1) in concluding that plaintiff violated its Child Find obligations after December 2014; (2) in finding that defendants are entitled to reimbursement for tuition for the 2014-2015 school year, as Spring Ridge was an appropriate placement and the equities are in their favor; and (3) in determining that defendants are entitled to reimbursement for tuition for the 2015-2016 school year, as the IEP was inadequate, denying J.N. of FAPE, Spring

Ridge was an appropriate placement, and equities are in defendants' favor. This opinion resolves the pending motions numbered 16 and 20 on the Docket, and the Clerk of Court is respectfully requested to close this case.

        SO ORDERED

Dated:  New York, New York
          October 13, 2017

                                                      Thomas P. Griesa
                                                        U.S. District Judge